NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DIE CASTERS INTERNATIONAL, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> UNITED STATES OF AMERICA, : <br> : <br> Defendant : | Civil Action No. 08-cv-4402 (PGS) <br><br> **OPINION** |

**SHERIDAN, U.S.D.J.**

  This case involves a dispute between plaintiff Die Casters International ("Plaintiff") and the United States government ("Defendant") that was originally adjudicated before the United States Court of Federal Claims. *Die Casters Int'l v. United States*, 73 Fed. Cl. 174 (Fed. Cl. 2006) ("*Die Casters I*"). After having its contract claims dismissed by that court after a trial, Plaintiff now seeks relief in this Court based on the torts of conversion and intentional interference with contractual relations or prospective economic advantage. Currently before the Court is a motion dismiss filed by Defendant pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant seeks dismissal on one of the following four grounds: (i) Plaintiff failed to file suit within six months of a final agency denial in violation of the Federal Tort Claims Act ("FTCA"); (ii) the FTCA bars claims against Defendant arising out of interference with contract rights; (iii) Plaintiff's claims have already been decided by the Court of Federal Claims; and (iv) Plaintiff's claims are barred by the doctrine of claim preclusion. For the reasons set forth below, the Court will grant

Defendant's motion to dismiss based on the doctrine of claim preclusion. Plaintiff cannot be afforded limitless attempts at litigating claims that have been fully, comprehensively and exhaustively litigated in another forum.

## I. BACKGROUND

The facts of this matter have already been set by the court in *Die Casters I* and are incorporated as if set forth at length herein. Additionally, the Court adds the following background.

Plaintiff's claims arise from a cost-sharing agreement with the United States Defense Nuclear Agency in which the government agreed to partially fund Plaintiff's operation in a joint venture with a Ukraine government-related entity, Meridian Joint Stock Company ("Meridian"). The purpose of the joint venture was to convert a former military plant located in Burevestnik, Kiev, Ukraine into a die cast manufacturing facility. *Die Casters I*, 73 Fed. Cl. at 176. Plaintiff alleges that the government wrongfully took control of Plaintiff's die casting machines and related equipment and transferred it to Meridian in violation of the parties' agreement. (Compl. ¶¶ 1, 36.)

In February 2004, Plaintiff filed claims against the government pursuant to the FTCA for damages resulting from breach of contract and tort. *Die Casters I*, 73 Fed. Cl. at 188 (discussing contract claims); (Compl. ¶ 5 (discussing tort claims).) In response to Die Casters's notice, on June 25, the government issued a final decision denying all of Plaintiff's contract claims, *Die Casters I*, 73 Fed. Cl. at 188-89, and it held Plaintiff's tort claims in abeyance pending further resolution of the contract claims in the United States Court of Federal Claims (Compl. ¶ 5). On July 6, Plaintiff filed a complaint in the Court of Federal Claims requesting review of the government's final agency decision and alleging five causes of action sounding in contract. From November 14, 2005 to November 17, the Court of Federal Claims convened a trial. Following this trial, in a written opinion the court dismissed Plaintiffs' contract claims.

On December 8, 2006, the United States Army Claims Service issued a notice of final action denying Plaintiff's tort claims. An appeal of the government's decision was denied January 30, 2008. As a result, on September 3, 2008, Plaintiff filed a complaint in this Court seeking djudication of its tort claims. (The complaint was timely served on the Clerk's Office on July 30, 2008, but was inadvertently misplaced, causing it to be filed on September 3. (Pl. Br. at 6.)) Thereafter, Defendant moved to dismiss arguing that Plaintiff's claims had already been litigated in *Die Casters I*.

The following relevant facts are identical in both this case and *Die Casters I*:

* The equipment in each case is the same. (*Compare* Compl. ¶ 1 (die casting machines and related equipment)) *with Die Casters I*, 73 Fed. Cl. at 184-86 (listing equipment which included die casting machine, die casting press unit, a furnace, and accessory equipment).

* The parties and stakeholders are the same, including Die Casters, Department of Defense and Government of the Ukraine.

* The purpose of the project is the same; that is, to dismantle weapons of mass destruction pursuant to the Cooperative Threat Reduction Act. (*Compare* Compl. ¶ 3) *with Die Casters I*, 73 Fed. Cl. at 176.

* The contract at issue is the same: number DNA 001-95-L-0169. (*Compare* Compl. ¶ 12 Ex. A) *with Die Casters I*, 73 Fed. Cl. at 177-78.

In addition to these facts, the *Die Casters I* court made the following legal rulings regarding the parties' contract:

* The government breached the Limitation of Cost Clause of the contract because it failed to negotiate an equitable distribution of the equipment upon closure of the

contract. *Id.* at 191.

* The "Government's breach did not cause Plaintiff to incur damages." *Id.* at 191-94.

* Die Caster failed to fund its 26% of the cost for converting the arms facility into a die casting facility, but "since [Plaintiff] did not incur any costs to purchase the equipment, [Plaintiff] would not have received any property if an equitable distribution had taken place. *Id.* at 194.

The *Die Casters*'s court further determined that the government did not wrongfully interfere with Plaintiff's property. Specifically, Judge Braden determined that when the government shipped the die casting equipment to the Burevestnik facility, it owned 100% of the equipment:

> Since the equipment was purchased solely with Government funds, only the Contracting Officer had the responsibility to determine, if, and when, title to the equipment would vest in the joint venture. Without holding title, the Government would not have the legal ability to transfer title to the joint venture. Accordingly, since the joint venture was never established, the Government, as title-holder, had the right to transfer the equipment to Burevestnik when the Contract expired.

*Id.* at 195. Nor did the court find any breach of implied covenant of good faith and fair dealing, "the duty not to interfere with the other party's performance . . . and expectations":

> Therefore, the Government did not "destroy' [Plaintiff's] "reasonable expectations" as to the potential benefits of the Contract. The record establishes that the Contracting Officer's decision to transfer the equipment to the Ukranian Government for delivery to Burevestnik was reasonable. Moreover, the record evidences that the Government attempted to cooperate with [Plaintiff] throughout the administration of the Contract. Indeed, the Government was not obligated to fund the Contract beyond October 27, 1997.

*Id.* at 196 (internal record citations omitted).

## II.  STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950.  A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949;  *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997).  The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements."  *Twombly*, 550 U.S. at 555.  Meaning, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## III.  DISCUSSION

Defendant argues that Plaintiff's complaint should be dismissed on the basis of claim preclusion.  "The purpose of claim preclusion is to avoid piecemeal litigation of claims arising from the same events."  *Churchill v. Star Enters*. 183 F.3d 184, 194 (3d Cir. 1999).  "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Id.* (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 473 (1998)).  "A determination of whether two lawsuits are based on the same cause of action 'turn[s] on the essential similarity of the underlying events giving rise to the various legal claims.'"  *Id.*

(quoting *Bd. of Trustees of Trucking Employees of N.J. Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)).

The Third Circuit takes a broad view when determining whether claim preclusion bars a cause of action and "focuses on the underlying events of the two actions." *Id.* Claim preclusion requires the following elements: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Id.* (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)). "Courts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out the same occurrence in a single suit." *Id.*

The first count of the complaint alleges conversion. Under New Jersey law, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *LaPlace v. Briere*, 404 N.J. Super. 585, 595 (App. Div. 2009) (quoting *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 83 (App. Div.1988)).

Given the elements of conversion, and the similarities they share with Plaintiff's previously adjudicated contract claims, the first count of Plaintiff's complaint must be dismissed. There is no dispute that there was a final judgment in *Die Casters I* or that the parties are the identical. It is also clear from the facts of this case that Plaintiff's conversion claim sounds in contract. "Under New Jersey law, a 'dispute that clearly arises out of and relates to a contract and its breach' sounds in contract and not in tort." *Farris v. County of Camden*, 61 F. Supp. 2d 307, 346 (D.N.J. 1999) (quoting *Stewart Title v. Greenlands Realty*, 58 F. Supp. 2d 370, 386 (D.N.J. 1999)). Both Plaintiff's conversion claim and its previous contract claims center in part on Plaintiff's right to the die cast equipment that was eventually handed over to Meridian by Defendant. The Court of

Federal Claims already determined that this equipment was lawfully transferred by Defendant because the government held ownership to it. *Die Casters I*, 73 Fed. Cl. at 195. Thus, all of the elements of claim preclusion are present. Count one of Plaintiff's complaint must be dismissed.

Count two of the complaint alleges intentional interference with contractual relations or prospective economic advantage (technically, two distinct but closely related torts). Intentional interference with contractual relations requires a plaintiff to satisfy the following elements: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003). Similarly, intentional interference with prospective economic advantage requires the following: (1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with "malice," (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989)).

Likewise, count two of the complaint fails as a matter of law. Both Plaintiff's intentional interference with contractual relations and prospective economic advantage sound in contract because they originate from the contract fully addressed in *Die Casters I*. *Farris*, 61 F. Supp. 2d at 346. In that case, far from maliciously interfering, the Court of Federal Claims determined that the record established that Defendant's transfer of equipment was reasonable, and that the Government attempted to cooperate with Plaintiff throughout the administration of the contract. *Die Casters I*, 73 Fed. Cl. at 196. Thus, count two of the complaint must be dismissed.

In an effort to sidestep dismissal, in opposition to Defendant's motion to dismiss, Plaintiff states for the first time that its tort claims involve more than the property at issue in *Die*

*Casters I*. (Pl. Br. at 4 ("Included in the equipment . . . were items that uniquely belonged to DCI and which are identified as business plans, training manuals, financial statements and ledgers, vendor and customer information. . . . This property was excluded from the disposition of claims before the Court of Claims.").) This argument, however, fails for at least two reasons. First, it is based on facts not pled in its complaint, but rather introduced through a brief. Second, as Defendant points out, Plaintiff's intangible and intellectual property was considered by the parties and the court in *Die Casters I*. Judge Braden noted that such property was "consistent with the plain meaning of the [c]ontract . . . ." 73 Fed. Cl. at 192 n.16. Given this assessment, Plaintiff cannot now create a new issue out of any alleged conversion or interference with its business plans, training manuals, financial statements and ledgers, or vendor and customer information. Thus, the Court will dismiss Plaintiff's complaint.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff's complaint is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 29, 2009